The STATE of Ohio, Appellee,

v.

LAMBERT, Appellant.

[Cite as *State v. Lambert* (1991), 71 Ohio App.3d 590.]

Court of Appeals of Ohio,
Ross County.

No. 1671.

Decided March 28, 1991.

*William J. Corzine III,* Law Director, for appellee.

*Spetnagel & Benson* and *Thomas M. Spetnagel,* for appellant.

---

HARSHA, Judge.

This is an appeal from judgments of conviction and sentence entered following a bench trial by the Chillicothe Municipal Court, finding Jason M. Lambert, defendant-appellant, guilty of operating a motor vehicle with a proscribed level of alcohol in his breath in violation of R.C. 4511.19(A)(3), and reckless operation, in violation of Section 333.02 of the Chillicothe City Ordinances.

Appellant assigns the following error:

"The trial court erred, to the prejudice of the appellant, in admitting the results of appellant's chemical breath test in evidence."

On November 4, 1989, two complaints were filed which charged appellant with operating a motor vehicle with a breath-alcohol level above the prohibited concentration, in violation of R.C. 4511.19(A)(3), and reckless operation, in violation of Section 333.02 of the Chillicothe City Ordinances. Appellant subsequently entered pleas of not guilty to the complaints' charges. A bench trial was held at which the following pertinent evidence was adduced.

On November 4, 1989, at approximately 2:13 a.m., Chillicothe Police Officer Michael R. Ater observed a car driven by appellant make a wide turn onto North Watt Street in Chillicothe, Ohio, accelerate at a high rate of speed, and then proceed to run three stop signs while swerving in and out of traffic lanes. When Officer Ater pulled appellant over, appellant appeared disoriented with bloodshot eyes and a strong odor of an alcoholic beverage about his person. After performing field sobriety tests, Officer Ater placed appel-

lant under arrest for reckless operation and operating a motor vehicle while under the influence of alcohol.

Officer Ater then transported appellant to the Ross County Law Enforcement Center where he administered a BAC verifier test to appellant. Appellant's test reading was .154 grams of alcohol per two hundred ten liters of his breath. Officer Ater had an operator's permit for administering the BAC Verifier test. Officer Ater initially testified that he could not recall any officers from the Chillicothe Police Department who had been issued a senior operator's permit and that neither his supervisor on the subject date nor the officer who was also present during the test were senior operators. Officer Ater subsequently testified that he believed that there were officers from the Chillicothe Police Department who were senior operators but he did not know or recall their names and he further did not know if his department had any senior operators at that time.

Lieutenant David Baker of the Ohio State Highway Patrol testified that he had conducted an October 31, 1989 calibration test on the same BAC Verifier machine that appellant used on November 4, 1989. According to Lieutenant Baker, he did not have any supervisory capacity and was not authorized to direct or control the activities of any Chillicothe Police Department employee. According to Officer Ater, the Highway Patrol and Lieutenant Baker, who neither controlled nor directed his activities, were in charge of maintaining the BAC Verifier machine.

Appellant objected to the admission into evidence of the BAC Verifier test results on the basis that the test was not performed by "an operator who is under the general direction of a senior operator" pursuant to Ohio Adm.Code 3701-53-07(B). The trial court overruled appellant's objection and admitted the test result by determining that although there was "no affirmative proof" showing that anyone in the Chillicothe Police Department was a senior operator, "the general direction requirement is * * * met by the fact that the Lieutenant apparently is responsible for the care and maintenance and calibration of the test instrument." On February 2, 1990, the trial court entered judgments finding appellant guilty as charged. The trial court sentenced appellant to forty-five days in jail, with forty days suspended, suspended his driver's license for eighteen months, and fined him $250 for the R.C. 4511.-19(A)(3) offense, and $100 for the reckless operation offense.

 Appellant's sole assignment of error asserts that the trial court erred in admitting the results of his chemical breath test into evidence because the proper foundation was not supplied. Determining foundational adequacy in this instance requires application of a legal standard. Accordingly, we review the trial court's determination without deference, but rather as a matter of

law. Because of the *per se* nature of the violation set forth in R.C. 4511.-19(A)(3), it is extremely important that the prosecution set a solid foundation for the admission of alcohol level tests.

R.C. 4511.19 provides in part as follows:

"(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

" * * *

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath[.]

" * * *

"(B) * * * [S]uch bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code. * * *"

Pursuant to R.C. 3701.143 and 4511.19, the Director of Health issued Ohio Adm.Code 3701-53-07(B), which provides as follows:

"Breath tests used to determine whether an individual's breath contains a concentration of alcohol prohibited or defined by of [*sic*] division (A)(3) of section 4511.19 * * * or any other statute or local ordinance prescribing a defined or prohibited breath-alcohol concentration *shall be performed by* a senior operator or *an operator who is under the general direction of a senior operator.* General direction does not mean that the senior operator must be physically present during the conduct of the test. A senior operator shall be responsible for the care, maintenance, and calibration of the evidential breath testing instruments." (Emphasis added.)

Under R.C. 4511.19(A)(2), (3), and (4), the results of the chemical test of the bodily substance are clearly an element of the proof of the offense and the accuracy of such tests are crucial and eminently important to a determination of guilt or innocence. *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 103, 532 N.E.2d 130, 133.

In conjunction with the necessity of accurate chemical tests, it has been held that before the results of a breath-alcohol test given an accused are admissible in evidence against him, the state must show that the instrument was in proper working order and that its manipulator had the qualifications to conduct the test. *Aurora v. Kepley* (1979), 60 Ohio St.2d 73, 14 O.O.3d 273, 397 N.E.2d 400, paragraph one of the syllabus; see, also, *State v. Ulrich* (1984), 17 Ohio App.3d 182, 183, 17 OBR 372, 373, 478 N.E.2d 812, 814. The purpose of Ohio Adm.Code 3701-53-07(B) is to insure accuracy in the testing process. *Kepley, supra,* 60 Ohio St.2d at 75, 14 O.O.3d at 274, 397 N.E.2d at

402. The Supreme Court of Ohio in *Kepley, supra,* addressed the administrative regulation's "general direction" requirement at 60 Ohio St.2d at 76, 14 O.O.3d at 275, 397 N.E.2d at 402:

"This term, which is quite different from direct supervision, requires that when Breathalyzer testing is performed by operators there be at least one senior operator who will care for, maintain and calibrate the equipment *and who will occasionally check the performance of the operators.* If these procedures are employed by the senior operator, then the operators, using the proper methods learned in training, will get accurate results." (Emphasis added.)

Where there is no evidence offered by the state establishing that an operator who performed the breath-alcohol test had his testing performance "occasionally checked" by a senior operator, the results of the test are inadmissible for lack of proper foundation. *State v. Dixon* (Aug. 27, 1985), Logan App. No. 8–84–8, unreported, 1985 WL 7390.[1] Appellee contends that Lieutenant Baker's testimony indicating that he was responsible for the care, maintenance, and calibration of the BAC Verifier machine and that he was a senior operator was sufficient to establish compliance with Ohio Adm.Code 3701–53–07(B). However, as in *Dixon,* there was no evidence that either Baker or any other senior operator occasionally checked the testing performance of Officer Ater. Pursuant to the manifest language of the Ohio Supreme Court in *Kepley, supra,* appellee did not meet its burden in establishing that it had complied with the evidentiary foundation requirement of Ohio Adm.Code 3701–53–07(B). Hence, the trial court erred as a matter of law in admitting appellant's BAC Verifier test result.

Appellee further argues that it has shown substantial compliance with Ohio Adm.Code 3701–53–07(B) and, thus, the test results were properly admitted pursuant to *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902. Generally, the failure of the state to establish strict compliance with the provisions of R.C. 4511.19 and the administrative regulations established pursuant to R.C. 3701.143 will not render evidence of chemical tests inadmissible in R.C. 4511.19(A)(1) prosecutions. However, such a failure will render such results inadmissible in cases relying on the statutory *per se* violations of R.C. 4511.19(A)(2), (3), and (4). See *Newark, supra,* and *State v. Caudill* (1983), 11 Ohio App.3d 252, 11 OBR 379, 464 N.E.2d 605. It has also been held that there is "leeway for substantial, though not literal compliance" with the administrative regulations promulgated by the Director of Health.

---

**1.** At the time of *Kepley* and *Dixon, supra,* the "general direction" requirement now contained in Ohio Adm.Code 3701–53–07(B) was contained in Ohio Adm.Code 3701–53–07(C).

*Plummer, supra,* 22 Ohio St.3d at 294, 22 OBR at 462, 490 N.E.2d at 904; see, also, *State v. Casaday* (1987), 40 Ohio App.3d 52, 531 N.E.2d 1325. Initially, we note that *Plummer* involved a violation of R.C. 4511.19(A)(1) in addition to a violation of the prohibited concentration provision of R.C. 4511.19(A)(4). More importantly, the *Plummer* court noted that the regulation at issue therein, Ohio Adm.Code 3701–53–05, was designed to address longer periods of nonrefrigeration in specimen retention, as opposed to a relatively slight delay between receipt and testing of the specimen as occurred in that case. Furthermore, *Plummer* was predicated in part upon the fact "that strict compliance is not always realistically or humanly possible." We are unaware of any human or other impediments to strict compliance with the senior operator requirement. Conversely, the Ohio Supreme Court's only pronouncement on the requirements of the "general direction" language of Ohio Adm.Code 3701–53–07(B) was that set forth in *Kepley, supra,* and appellee did not establish compliance pursuant to that case. Accordingly, in the absence of any evidence establishing that any senior operator occasionally checked Officer Ater's testing performance, we are not persuaded, pursuant to *Kepley* and *Dixon, supra,* that appellee has complied, either literally or substantially, with Ohio Adm.Code 3701.53–07(B). In so holding, we emphasize the necessity of accurate results in cases involving the statutory *per se* violations listed in R.C. 4511.19(A)(2), (3) and (4). *Newark, supra.*

We note that the instant appeal is from both the judgments convicting appellant of violating R.C. 4511.19(A)(3) as well as reckless operation in violation of Section 333.02 of the Chillicothe City Ordinances. The evidence in the case at bar was uncontroverted that appellant operated his vehicle recklessly by running three stop signs and weaving in and out of traffic lanes. Moreover, Officer Ater testified that prior to the administration of the BAC Verifier test, it was his opinion that appellant had operated his car while under the influence of alcohol. No evidence was admitted by appellant to rebut this opinion testimony. Accordingly, although the erroneous admission of the BAC Verifier test result entitles appellant to a reversal of his R.C. 4511.-19(A)(3) conviction, such error was harmless beyond a reasonable doubt with respect to the reckless operation conviction given the uncontroverted evidence supporting the latter offense. For the foregoing reasons, appellant's assignment of error is sustained in part, and the judgment of the trial court is reversed with respect to the R.C. 4511.19(A)(3) conviction and affirmed with respect to the reckless operation conviction.

*Judgment affirmed in part
and reversed in part.*

STEPHENSON, P.J., and GREY, J., concur.