OPINION
Rich Duggan, the President and sole owner of Duggan Homes, Inc., appeals from the decision of the Kettering Municipal Court rendering judgment in favor of plaintiff Viswanath R. Katta and against Rich Duggan personally, in the sum of one thousand ($1,000) dollars, plus interest and court costs.
 Duggan Homes, Inc., pursuant to contract with Mr. Katta, built Mr. Katta a home. As stated by the trial court in its decision and judgment following a bench trial: "The testimony revealed a stormy relationship between the parties during the construction process and at the closing." (June 9, 2000, no docket number.) Prior to the closing of the sale of the house, plaintiff attempted to reach Mr. Duggan at Duggan Homes, Inc. numerous times, without success. Id. The closing was scheduled for September 28, 1999. Prior to that date, Mr. Duggan went to the title agency and signed the deed and other closing documents. Id. Mr. Katta appeared at the closing to find an employee of Duggan Homes, Greg Boswell, present to represent the seller. Id.
Mr. Katta testified that prior to the scheduled closing, he had communicated to Mr. Duggan his dissatisfaction with many items that were missing in his new home and had suggested that in lieu of these missing items, Duggan Homes should build a deck on his new house. Mr. Katta even sent Mr. Duggan a sketch of the proposed deck. (Tr. 7.) On the day of closing, he testified that he tried to reach Mr. Duggan "about three times* * *once every two hours" and that without having an answer from him, Mr. Katta was not going to purchase the home that day. (Tr. 7-8.) When Mr. Katta went to the closing, he was disappointed to find that Mr. Duggan was not there and stated that he was not going to close until he heard from Mr. Duggan. (Tr. 8.) Mr. Katta then testified that:
 At that point, his manager called Rich and put me on the line. After some argument, Rich said the deck I asked for was going to cost him more than $3,000.00 and that is too much for him. Instead, he said he will build a deck of 10 x 10 size, which will cost about $1400.00. As I did not want to put a small deck there and having pressure from my family to close that loan, I ask[sic] Rich to give me a $1,000.00 instead of putting that small deck. For that, I can build a deck by myself at a later date. He agreed to that and said that he would send a check for a [sic] $1,000.00 immediately after the closing.
(Tr. 8.)
This apparent agreement was memorialized by Greg Boswell in a handwritten note which is identified as Plaintiff's Exhibit 1 and which is attached to this opinion as Appendix A, in which Mr. Boswell stated that "Mr. Katta will receive a $1,000.00 check for credit on deck! By October 15."
The October 15 date came and went without Mr. Katta receiving a check from Duggan Homes. On October 21, 1999, Mr. Boswell communicated to Mr. Duggan the fact that: "Mr. Katta called in regard to his check he was to receive for a Deck credit of $1,000.00" whereupon Boswell stated that in reply from Rich Duggan, Duggan apparently said, "He will receive $1,000.00 credit toward the deck we build for him!" Appendix B.
Mr. Katta thereupon filed a complaint in Small Claims Court against "Rich Duggan (Duggan Homes, Inc.)." The defendant, represented by counsel, moved to transfer the case to the regular docket, which was sustained by the trial court. Defendant then filed a motion for summary judgment, which was overruled on the grounds that "genuine issues remain as to material facts." (Decision and Entry, May 4, 2000, no docket number.)
The case came on for a hearing before the trial court on June 6, 2000, where Mr. Katta proceeded pro se and the defendant was represented by counsel. During the hearing, the handwritten documents by Mr. Boswell, attached hereto as Appendices A and B, were admitted as court's 1 and 2 over objection of counsel for defendant. The defendant testified that the $1,000.00 at issue would be a credit towards a deck to be built by Duggan Homes, Inc. He also denied that Boswell had authority to sign for the corporation.
There was an obvious conflict in the testimony as to whether the $1,000.00 was to be sent directly to Mr. Katta or whether it was simply to be a book credit transaction on the cost of a deck to be built by Duggan Homes, Inc. for Mr. Katta. The trial court clearly believed the testimony of Mr. Katta as against the testimony of Mr. Duggan and, finding Mr. Boswell acted within the scope of his apparent authority, rendered a judgment in the sum of $1,000.00 plus interest and costs in favor of Mr. Katta and against Mr. Duggan.
On appeal, Mr. Duggan presents the following four assignments of error:
 THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ALLOWING HEARSAY TESTIMONY;
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY INTRODUCING DOCUMENTS AS COURT EXHIBITS WHICH WERE NOT TENDERED BY EITHER PARTY;
 THE TRIAL COURT COMMITTED ERROR BY DETERMINING THAT THE ACTS OF THE DEFENDANT WERE ULTRA VIRES ACTS AND MADE OUTSIDE OF HIS CAPACITY AS A CORPORATE OFFICER.
Mr. Katta filed a pro se brief in which he admitted that he and his wife "started our house construction project with Duggan Homes, Inc., in October of 1998," and that every decision by the corporation since then had been made by Rich Duggan himself, and he believed that Mr. Duggan in person made the promise to send him $1,000.00 and not the corporation.
As to the first assignment of error, it is clear from the record that substantial and material factual issues were present and summary judgment was not appropriate. The first assignment of error is overruled.
As to the second assignment of error, the hearsay testimony complained of by the defendant was one statement by Mr. Katta testifying that: "It was apparent to me that he [Duggan] was intentionally avoiding my calls." (Tr. 7.) Since this was merely plaintiff's impression, it is difficult to find it as hearsay about a statement by Mr. Duggan. The second objected hearsay was Mr. Katta's statement that "he [Mr.Boswell] was surprised that I hadn't got [the $1,000.00]." (Tr. 9.) While hearsay, it does not appear to be in conflict with the evidence nor that prejudicial to the defendant. We find the trial court's overruling of objection to be a harmless error. The second assignment of error is overruled.
The documents attached hereto as Appendices A and B, which the court admitted over objection, were essential to the plaintiff's case. Mr. Katta, not being represented by counsel, was unfamiliar with the procedures of putting such materials into evidence and the court understandably admitted them in order to have a complete record of the matters at issue. This court itself has recognized that a judge "is not a mere sergeant at arms to preserve order in the court room. His chief function is to prevent injustice being done between the parties, and, as a corollary thereto, to see that justice is actually administered." Bakerv. Fickert (Sept. 13, 1995), Miami App. No. 95-CA-21, 16, citing and quoting from King Co. v. Horton (1927), 116 Ohio St. 205, 211. This court also had found grounds for reversal when, during a bench trial, the judge crosses "the boundary between the judicious and impartial conduct of a trial and the advocacy of one party's case." Dayton v. Dabney
(1994), 99 Ohio App.3d 32, 40. Like Baker, the trial judge in the casesub judice never even came near that boundary. The third assignment of error is overruled.
The serious issue in this case is presented by the fourth assignment of error, that is, whether Mr. Duggan's actions and promises were those of his individually or whether he was acting as president of Duggan Homes, Inc. Mr. Duggan, in his counsel's brief, argues, without any citation of authority whatsoever, that his acts were those of a corporate officer. The issue presented is whether the corporate veil is to be pierced in this case. We first note that a corporation is a separate legal entity from its shareholders, even where there is only one shareholder. LeRouxBlilley Supper Club v. Ma (1991), 77 Ohio App.3d 417. The controlling authority in Ohio on the issue of piercing the corporate veil is the Ohio Supreme Court case of Belvedere Condominium Unit Owners' Ass'n v. R.E.Roark Cos., Inc. (1993), 67 Ohio St.3d 274. The court in that case set forth the following holding on the issue:
 * * *. Thus, the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
 Id., 289.
The court also reminded the parties that: "Mere control over a corporation is not in itself a sufficient basis for shareholder liability." Id.
In applying the Belvedere test, the burden of proof is upon the party seeking to impose individual liability on the shareholder to demonstrate that the grounds for piercing the corporate veil exist. Univ. CircleResearch Ctr. V. Galbreath Co. (1995), 106 Ohio App.3d 835, 840. See also, Janos v. Murduck (1996), 109 Ohio App.3d 583.
In the case sub judice, no evidence was presented at the hearing that Rich Duggan was using his corporation deliberately to defraud Mr. Katta. Furthermore, Mr. Katta in his filed "reply to the notice of appeal" stated that: "In my claim, I asked Mr. Rich Duggan to honor the promise he made on behalf of Duggan Homes, Inc." (Emphasis supplied.) That is a judicial admission made by Mr. Katta personally and he must be held to it. After a search of the entire record and a careful perusal of the testimony at the hearing, we find that Mr. Katta did not satisfy his burden of proof that Mr. Duggan was acting personally and individually, and not as the president of a duly operating corporation. The closest the trial court came to considering the issue of piercing the corporate veil was when it said in its opinion that the basis for its decision is "equity and the law of agency." (Decision, June 9, 2000, no docket number.)
We therefore sustain the appellant's fourth assignment of error, vacate the judgment against Rich Duggan personally, and remand the case to the trial court for its entry of a judgment in the amount of $1,000.00, plus interest and costs, against the corporation, Duggan Homes, Inc.
 __________ YOUNG, J.
WOLFF, P.J., and BROGAN, concur.